**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SARA NOUR,<br>on behalf of herself and all others<br>similarly situated<br><br>Plaintiff,<br><br>v.<br><br>ZILLOW GROUP, INC.,<br><br>Defendant, | CASE NO.: 1:26-cv-01885-TJK<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sara Nour ("Plaintiff") brings this First Amended Class Action Complaint ("Complaint") on behalf of herself and all others similarly situated against Defendant Zillow Group, Inc. ("Defendant" or "Zillow"), and alleges as follows:

## I. NATURE OF THE ACTION

1. There is a cost-of-living crisis in our country, one that is especially acute in the housing market. One reason is the relentless imposition of add-on fees in excess of advertised rental rates—including "pay to pay" fees like those at issue in this Complaint, wherein consumers are charged add-on junk fees by third party middlemen when consumers are simply doing what they are required to do under the terms of their residential leases: make their rent payments.

2. One such middleman is Zillow, which, through its online rent-payment platform, Zillow Rental Manager, inserts itself into the relationship between renters and their landlords, then in effect extracts additional, unauthorized rent payments from renters who have no option but to submit their rent through Zillow's online interface.

3. Plaintiff brings this putative class action seeking monetary damages, restitution and public injunctive relief arising from Zillow's deceptive and unfair imposition of junk "Transaction Fees" (*i.e.*, added fees imposed on each monthly rental payment completed through Zillow Rental Manager that are neither contemplated nor authorized by tenants' lease agreements).

4. Defendant's fee is a classic example of a company-imposed "junk fee" that serves solely as a profit generator for Defendant while providing no added value to consumers.

5. Defendant's Transaction Fee is deceptive because Defendant is or should be aware that the fee is neither disclosed nor permitted by consumers' residential leases.

6. Indeed, the Transaction Fee amounts to additional, unexpected rent for tenants that is undisclosed in lease agreements. Defendant's knowing and intentional imposition of Transaction Fees over and above the contracted-for rent constitutes a tortious interference with contract. Moreover, it is unfair and deceptive under state consumer protection laws to charge renters fees to make their lease payments, especially when they are not informed of such fees prior to leasing an apartment. Just as an advertised hotel rate reasonably implies there will not be additional fees for using a bed, an advertised lease rate reasonably implies a consumer may pay the amount of a lease without additional charges or the assessment of additional, unauthorized rent. Zillow's Transaction Fees are also deceptive, unfair and unlawful insofar as they constitute hidden profit.

7. Plaintiff and Class members are injured by Defendant's deceptive, unfair and illegal practices. Plaintiff brings this action on behalf of herself and a putative Class and seeks actual damages, restitution and injunctive relief on behalf of the general public to prevent Defendant from continuing to engage in its illegal practices described herein.

## II. PARTIES

8. Plaintiff is a citizen and resident of Middlesex, New Jersey. At all relevant times alleged herein, she was a citizen and resident of, and tenant of a property in, the District of Columbia and was assessed a Transaction Fee for paying her rent through Defendant's online portal. Plaintiff's lease is attached hereto as **Exhibit 1**.

9. Defendant is a corporation headquartered in the State of Washington. Defendant provides an online real estate marketplace that allows users to buy, sell, rent and finance properties. Relevant here, Defendant also provides property management services for property managers and landlords, including an online rent collection platform called Zillow Rental Manager.

10. Defendant's conduct as alleged herein emanates from its corporate headquarters in Washington.

## III. JURISDICTION AND VENUE

11. This Court has jurisdiction over the claims set forth below pursuant to 28 U.S.C. §§ 1332 and 1441.

12. Plaintiff is informed and believes that the Court has personal jurisdiction over Defendant because Defendant is a corporation authorized to conduct business in the District of Columbia, because Defendant purposefully avails itself of the privilege of conducting ongoing business activities within the District of Columbia and because the acts and omissions alleged herein occurred, in part, in the District of Columbia.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Zillow is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## IV. FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. Overview of Zillow Rental Manager

14. Defendant contracts with property management companies and landlords throughout the country to provide Zillow Rental Manager, an online portal where tenants can pay their monthly rent.

15. Through these arrangements, property management companies and landlords are able to upload their leases onto Zillow's platform.

16. Zillow Rental Manager is how Plaintiff and Class members paid their rent and were assessed the Transaction Fee.

17. Consumers making their rental payments through Zillow Rental Manager are charged the Transaction Fee and are not timely or adequately informed of the amount Defendant charges for the Transaction Fee.

18. Defendant's disclosures to consumers of the alternative means to pay their rent to avoid the Transaction Fee are misleading, resulting in consumers incurring the Transaction Fee that they otherwise would not have paid.

### B. The Rise of Junk Fees in Renting

19. The proliferation of rental housing junk fees like Defendant's Transaction Fee has negatively impacted millions of renter households nationwide.[1]

[1] *"What the Heck, Dude!"*, *How States Can Fight Rental Housing Junk Fees*, National Consumer Law Center, Sept. 2024, available at https://www.nclc.org/wp-content/uploads/2024/09/202409_Report_What-the-Heck-Dude.pdf at pp. 5-7.

20. Additional, undisclosed fees tacked onto rent payments pose a real threat to consumers' financial stability, particularly considering that they force tenants to spend significant and unbudgeted sums of money each month on top of rent.[2]

21. "Commonly referred to as 'junk fees', these [transaction] fees can be undisclosed, unpredictable, and arbitrary and can quickly accumulate for tenants, putting safe and decent rental housing even more out of reach."[3] These "surprise fees are imposed for services with little to no value," and "add up quickly, rendering advertised rental prices inaccurate and sometimes forcing tenants to spend hundreds of dollars each month on top of rents."[4]

22. In 2022, the National Consumer Law Center ("NCLC") conducted a survey of legal services and nonprofit attorneys throughout the country which examined various types of rental junk fees charged to renters in the rental housing market.[5] The survey revealed that 60% of respondents from 23 states observed convenience fees, and that "[s]ome housing providers no longer accept payment in person or by check, meaning that tenants have to pay their rent online," and often times, must do so "through third-party companies," like Defendant, "that charge fees."[6]

23. Defendant's failure to include its rental junk fees in the total cost of the advertised monthly rental rate is problematic—"While a renter may be able to manage and plan for high rents

---

[2] *Junk Fees Toolkit*, National Low Income Housing Coalition ("NLIHC") State and Local Tenant Protection Series: A Primer on Renters' Rights, available at https://nlihc.org/sites/default/files/2022-07/SLI_Rental_Fees_Toolkit.pdf at p. 7.

[3] *Id.* at p. 3.

[4] *Id.* at p. 6.

[5] *Too Damn High, How Junk Fees Add to Skyrocketing Rents*, National Consumer Law Center, Mar. 2023, available at https://www.nclc.org/wp-content/uploads/2023/03/JunkFees-Rpt.pdf.

[6] *Id.* at pp. 17-18.

if they know about them in advance, they may not be expecting an array of junk fees, which could push them over their budgets."[7]

24. Indeed, the FTC recently issued a warning to rental management software companies, including Defendant, that these practices may be unfair and deceptive. The FTC stated:

> The FTC is committed to rooting out anticompetitive, unfair and deceptive acts or practices in the rental housing market. Consumers who search for potential rental housing units cannot meaningfully compare alternative choices without understanding the total price required to rent the advertised properties. When consumers do not know the total price of the advertised properties—or any product—they cannot make informed decisions, and the market cannot operate as efficiently as it otherwise would. And unfair and deceptive acts in the rental housing market in a time when hard-working Americans continue to suffer the effects of the Biden Administration's cost-of-living crisis are especially harmful to consumers and markets.
>
> Available information suggests that property management software providers are limiting the ability of rental property managers and owners to accurately advertise the total monthly rental price, inclusive of all mandatory fees. Property management software programs may cause consumer harm and harm to competition in the rental housing market when they do not accurately display complete pricing information across websites hosted on their platforms, or where they restrict property owners' and managers' ability to aggregate or convey accurate cost information to consumers on third-party listing sites.[8]

25. Thus, the FTC warned property management software providers, including Defendant, to comprehensively review their practices to ensure consumers are provided "with transparent rental prices."[9]

26. But Defendant's Transaction Fees impede that effort.

27. The consequences of these junk fees are significant. As a leading player in the third-party rental payment processing market recently acknowledged in a July 31, 2025, blog post,

---

[7] *Id.* at p. 6.

[8] *See* **Exhibit 2** (footnotes omitted).

[9] *See id.*

"[a]lmost half (49.7%) of renters spend over 30% of their income on housing, and nearly a quarter are severely burdened, paying more than half. That's a lot of people and money. The overall cost of renting, including utilities and other basic housing costs, has increased by 3.8% year-over-year—the largest annual real increase in rental costs since at least 2011. That, alongside an increase in grocery, gas, and utility expenses, makes it nearly impossible to have any financial breathing room—but rent waits for no one. Unfortunately, this could mean late fees, overdraft charges, or even falling behind on rent."[10]

28. Despite the financial hardship consumers face meeting their monthly rental obligations, Defendant nevertheless charges these same consumers a Transaction Fee to make their monthly rental payments.

### C. Defendant Charges Consumers Transaction Fees for Processing Rent Payments

29. Defendant charges consumers a pay-to-pay Transaction Fee on rent payments in an amount beyond the price of consumers' monthly rent obligations.

30. Defendant's Transaction Fee is deceptive because consumers are not informed that Defendant is charging a fee that is not already included in their residential leases, nor does Defendant inform consumers that the fee is not permitted by their leases.

31. The Transaction Fee is not tethered to any actual processing or expense, nor does it constitute any service not reasonably already included in a residential lease, *viz.*, the ability to make a payment under the lease. Instead, the fee is a profit generator for Defendant.

---

[10] https://www.rentcafe.com/blog/apartmentliving/tips-tricks-renters/managing-flexible-rent-payments/ (last accessed Mar. 3, 2026).

32. Reasonable consumers like Plaintiff understand the advertised cost for monthly rent to be the total cost of their rent obligation as represented—not the total cost of monthly rent *plus* an additional, undisclosed charge. In other words, Defendant's fee amounts to additional, unexpected rent for tenants above the amount for which they contracted.

**D. Defendant's Transaction Fee is a Junk Fee that Violates Federal Guidance and State Consumer Protection Laws**

33. Defendant's Transaction Fee is precisely the type of "junk fee" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.[11]

34. As the FTC said recently in its effort to combat junk fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.[12]

35. In a press release, FTC Chair Lina M. Khan has articulated the financial harm to consumers arising from fees like Defendant's:

> It's beyond frustrating to end up spending more than you budgeted because of random, arbitrary fees. No one has ever felt that a "convenience fee" was convenient. Companies should compete to provide the best quality at the best price,

---

[11] The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, Mar. 5, 2024, available at https://bidenwhitehouse.archives.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/.

[12] Federal Trade Commission, *FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees*, Oct. 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

> not to see who can squeeze the most added expenses out of consumers. That's especially true at a time when families are struggling with the effects of inflation.[13]

36. Defendant violates federal guidance and state consumer protection laws by charging the Transaction Fee for processing rent payments on its platform.

**E. Consumers Don't Agree to Pay Zillow Anything at the Time of Leasing**

37. Zillow contracts with property management companies and landlords throughout the country to provide various property management, leasing and resident services, including collecting rent payments from consumers through its online payment-processing platform.

38. When consumers like Plaintiff enter into lease agreements, the amount they are to pay each month under the lease is a material term of the lease agreements.

39. The lease agreements explicitly list the monthly cost of rent as well as the costs of other services that are included in the cost of rent. However, the lease agreements do not authorize the assessment of Zillow's Transaction Fee.

40. Furthermore, Zillow's payment platform lists the amount consumers like Plaintiff and Class members are to pay for their rent under their lease agreements and does not adequately inform consumers of any Transaction Fee in addition to the monthly cost of rent.

41. As a result, consumers end up paying an additional monthly charge in the form of the Transaction Fee, merely for the opportunity to pay their rent.

42. In short, Plaintiff and Class members reasonably understood the advertised lease rates to mean they could pay the amount due under that lease by any means provided, and without additional charges or the assessment of additional, unauthorized rent.

---

[13] Federal Trade Commission, *Federal Trade Commission Explores Rule Cracking Down on Junk Fees*, Oct. 20, 2022, available at https://www.ftc.gov/news-events/news/press-releases/2022/10/federal-trade-commission-explores-rule-cracking-down-junk-fees.

43. Zillow contracts with thousands of landlords and in each case fails to put processes in place at the time of leasing that would require landlords who use its service to procure authorization from consumers to use Zillow or to pay extra fees or rent to Zillow.

44. Zillow charges consumers a "pay-to-pay" Transaction Fee on rent payments in an amount beyond the price of their monthly rent obligation.

45. Zillow's Transaction Fee amounts to additional unexpected rent for tenants over and above the amount they contracted for.

### F. Zillow's Collection of the Pay-to-Pay Transaction Fee Is Unlawful Debt Collection Activity

46. In addition to Zillow's imposition of the pay-to-pay Transaction Fee violating federal junk-fee guidance and state consumer protection laws, it also violates the Fair Debt Collection Practices Act ("FDCPA") as an unlawful debt-collection practice.

47. The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

48. The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

49. The FDCPA defines "debt collector" as "any person who uses any instrumentality … the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed . . . or asserted to be owed or due another." *Id.* § 1692a(6).

50. The FDCPA defines "communication" as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

51. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . for personal, family, or household purposes." *Id.* § 1692a(5).

52. The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

53. The FDCPA also prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt," including "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

54. Courts have interpreted § 1692f(1) as prohibiting the charging of any amount not expressly authorized in the agreement creating the debt or affirmatively permitted by some state or federal law, including pay-to-pay fees like Zillow's Transaction Fee. *See, e.g.*, *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370 (4th Cir. 2022); *DeSimone v. Select Portfolio Servicing, Inc.*, 748 F. Supp. 3d 136 (E.D.N.Y. 2024); *see also Tuttle v. Equifax Check*, 190 F.3d 9, 11, 15 (2d Cir. 1999) (applying FDCPA to $20.00 service charge imposed to defray collection costs); *Schwartz v. I.C. Sys., Inc.*, No. 16-CV-5173 (DLI)(LB), 2018 WL 1582224, at *3 (E.D.N.Y. Mar. 30, 2018) (holding that processing fee associated with using online debt payment method is an "amount" under FDCPA); *Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568, 582 (E.D.N.Y. 2015) ("Collection of this [processing] fee fits within the scope of conduct described in [Section] 1692f(1) [of the FDCPA] and, by operation of that provision, would be deemed a violation of [Section] 1692f.") (granting summary judgment in part); *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 439 (E.D.N.Y. 2014) (concluding that $5.00 credit card processing fee for any debt

payments made over the phone is "incidental to the principal obligation" under FDCPA); *Shami v. Nat'l Enter. Sys*., No. 9-CV-722 (RRM) (VVP), 2010 WL 3824151, at *4 (E.D.N.Y. Sept. 23, 2010) (holding that FDCPA applies to pay-by-phone fees that were incidental to plaintiff's purported actual debt); *Lembeck v. Arvest Cent. Mortg. Co*., 498 F. Supp. 3d 1134, 1137 (N.D. Cal. 2020) ("Any separate contract to pay an incidental fee is prohibited unless 'permitted by law'—that is, by some state or federal statute or regulation. Because no such law exists, the contract and the [pay-to-pay] fee remain unlawful."); *Simmet v. Collection Consultants of Cal*., No. 16-CV-2273 (BRO), 2016 WL 11002359, at *5 (C.D. Cal. July 7, 2016) (rejecting arguments that convenience fees do not violate the FDCPA because they were optional, considered a separate agreement, and were not connected with the debt); *Lindblom v. Santander Consumer USA, Inc*., No. 15-CV-990 (LJO) (BAM), 2016 WL 2841495, at *7 (E.D. Cal. May 9, 2016) (joining the "overwhelming majority of courts" and determining that fees assessed for debt payments made online or via telephone violated Section 1692f(1) of the FDCPA); *Wittman v. CB1, Inc*., No. 15-CV-105 (BLG) (SPW) (CSO), 2016 WL 1411348, at *5 (D. Mont. Apr. 8, 2016), *R. & R. adopted*, No. 15-CV-105 (BLG) (BMM), 2016 WL 3093427 (D. Mont. June 1, 2016) (following "majority of courts" and holding that a "transaction fee imposed for using a certain payment method" was impermissible under Section 1692f(1) of the FDCPA); *Thomas v. John A. Youderian Jr. LLC*, 232 F. Supp. 3d 656 (D.N.J. 2017) (convenience fee was covered by the FDCPA).

55. Zillow violates the FDCPA by charging Transaction Fees that are neither permitted by law nor authorized by Plaintiff's and Class members' lease agreements and by misrepresenting to tenants that it is entitled to collect pay-to-pay Transaction Fees.

56. By violating the FDCPA, Zillow automatically violates D.C. Code § 28-3814, which renders any violation of the FDCPA a *per se* violation of the District of Columbia's debt-collection statute. *See* D.C. Code § 28-3814(z).

**G. Zillow's Transaction Fees are Hidden Profit**

57. Zillow's Transaction Fees are also deceptive, unfair and unlawful insofar as they constitute hidden profit.

58. Payments by check can cost payment processors like Zillow and landlords and/or property managers anywhere between $1.01 and $2.00 per transaction in processing and other fees, per a 2022 report by the Association for Financial Professionals.[14] Every check needs to be opened, reviewed, keyed into a computer system and deposited. Delays in postal operations and the high risk of human error generate customer service calls and require internal checkpoints and increased oversight. Tenants who are concerned about the timeliness of their rental payment may call to ensure it was received and properly credited, adding to the customer service work associated with this routine part of rent collection.

59. Because it is so expensive to process check transactions, most landlords and/or property managers require tenants to make their monthly rental payments online via electronic means (*e.g.*, credit card, debit card or ACH transfer). While offered under the auspices of improving services for tenants, the cost of electronic payment methods ranges from a few cents

[14] *See* https://www.nacha.org/news/ach-costs-are-fraction-check-costs-businesses-afp-survey-shows; https://www.afponline.org/docs/default-source/registered/2022-afp-payments-cost-survey-highlights.pdf.

(ACH and debit cards) to 1.97% of the total transaction amount (credit cards).[15] As a result, promoting payment of rent via electronic means reduces landlords' and/or property managers' overhead costs enormously.

60. For many tenants, the automatic ACH system is impractical as it requires them to agree to a fixed amount and date for a debit each month out of a pre-determined bank account and increases their vulnerability to banking errors. Tenants may also have budgetary needs or personal preferences that cause them to want more control over their finances. Some may wish to choose their payment method on a monthly basis. Others may be sharing responsibility for paying the rent with another person, with rent funds coming from multiple accounts.

61. Zillow's Transaction Fees are materially higher than any payment-processing costs incurred by Zillow, can add up to hundreds of dollars over the life of a lease agreement, and provide millions of dollars in profits for Zillow. Such profit is unlawful, and Zillow's payment portal fails to inform consumers that the Transaction Fees are nothing more than pure profit for Zillow and are, in fact, not related to the processing of electronic "transactions" at all.[16]

62. In short, Zillow misleads consumers into believing its Transaction Fees are a legitimate pass-through cost, when they are not. They are an undisclosed source of profit for Zillow.

---

[15] *See* https://www.federalreserve.gov/paymentsystems/regii-average-interchange-fee.htm (Following the 2011 passage of the Durbin Amendment, debit card interchange fees in the U.S. are capped at $0.21 plus 0.05% of the transaction value); https://wallethub.com/edu/credit-card-interchange-fees-by-country/129627 (Average credit card interchange fee in the U.S.: 1.97% (Visa) and 1.79% (Mastercard)).

[16] *See, e.g.*, 15 U.S.C. § 1693o-2 (for debit card transactions, capping the interchange rate paid to non-exempt card issuers at 0.05 percent plus twenty-one cents); 12 CFR part 235.

### H. Plaintiff's Experience

63. At all times relevant, Plaintiff rented an apartment in the District of Columbia and paid her rent each month on Defendant's platform.

64. For example, on November 1, 2024, Plaintiff paid her monthly rent of $2550.00 with a credit card on Defendant's platform and was charged a $75.22 Transaction Fee (labeled a "Card fee" on Plaintiff's receipt) from Defendant. The Transaction Fee was added to her total.

65. Plaintiff reasonably believed she was required to pay the Transaction Fee in order to pay her monthly rent on Defendant's platform with her chosen payment method.

66. At no time during the rent payment transaction or during the lease signing process did Plaintiff understand the Transaction Fee to be an optional charge for her chosen payment method.

67. Plaintiff relied on Defendant's misrepresentations and omissions about Defendant's Transaction Fee in making her rent payment.

68. Had Plaintiff known that she would be charged a useless Transaction Fee for making her rent payment, or that the Transaction Fee was avoidable, she would have chosen some other method to make her rent payment.

## V. PLAINTIFF'S CLAIMS SOUNDING IN FRAUD ARE ALLEGED WITH SPECIFICITY

69. Defendant is in the best position to know what content it placed on its platform during the relevant timeframe and the knowledge it had regarding the Transaction Fee and related disclosures. To the extent necessary, Plaintiff satisfies the pleading requirements for claims sounding in fraud by alleging the following facts with particularity:

70. **WHO**: Defendant unlawfully, unfairly, deceptively and/or misleadingly imposed the Transaction Fee on consumers paying their rent.

71. **WHAT**: Defendant's conduct was, and continues to be, fraudulent because it hid, concealed, obfuscated or otherwise disguised additional charges to consumers paying their rent. Defendant's conduct deceived Plaintiff and Class members into believing that the Transaction Fee is lawful when paying their rent, when in reality the Transaction Fee is untimely and misleadingly disclosed, and is an excessive and unlawful charge. At all times relevant to this action, Plaintiff and Class members utilized Defendant's platform to make rental payments where Defendant then imposed the Transaction Fee. Defendant charged the Transaction Fee to all consumers paying their rent using a one-time credit or debit payment method. Defendant failed to post, display or otherwise adequately disclose the Transaction Fee to consumers during the signing of their lease agreements and misleadingly and unlawfully represented the Transaction Fee during the rental payment process. Defendant knew, or should have known, that it failed to adequately disclose the Transaction Fee when Plaintiff and consumers entered into their lease and that this fee is material to reasonable consumers, including Plaintiff and Class members. The Transaction Fee is a sham, a classic "junk fee." Any service purportedly provided by Defendant, which is allowing consumers to pay their rent, is a core aspect of the service Defendant is required to provide. The Transaction Fee is merely a second payment—in the form of a junk fee—for the convenience for which that consumers are already paying.

72. **WHEN**: Defendant engaged in these unlawful, unfair, deceptive or otherwise misleading practices during the putative Class periods and at the time Plaintiff and Class members signed their lease agreements and made rental payments through Defendant's platform, prior to

and at the time Plaintiff and Class members made claims after realizing the unlawful junk fee, and continuously throughout the applicable Class periods.

73. **WHERE**: Defendant's unlawful, unfair and deceptive junk fee was uniformly applied to consumers who made rental payments through Defendant's platform. Defendant's website, advertising and other marketing materials failed to timely or adequately explain or otherwise adequately disclose the Transaction Fee being charged.

74. **HOW**: Defendant hid, obfuscated or otherwise concealed from consumers the imposition and lawfulness of its junk fee in order to prevent consumers from discovering the existence and lawfulness of the additional charges. Even if consumers were to discover the Transaction Fee through their own investigation, Defendant failed to explain or adequately disclose the nature of the Transaction Fee or why it was imposed.

75. **WHY**: Defendant engages in its unlawful, unfair and deceptive junk fee scheme in order to induce Plaintiff, Class members and all reasonable consumers to pay the misleading and unlawful Transaction Fee, resulting in significant revenues for Defendant.

76. **INJURY**: Plaintiff and Class members paid a premium or otherwise paid more for their rent than they otherwise would have absent Defendant's misrepresentations.

## VI. TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

77. For years, Defendant had actual knowledge that it hid, obfuscated or otherwise concealed from consumers the imposition and lawfulness of the Transaction Fee in order to prevent consumers from discovering the existence of and the lawfulness of the additional charges. Even if consumers were to discover the Transaction Fee through their own investigation, Defendant failed to explain or adequately disclose the nature of the Transaction Fee or why it was imposed.

78. Defendant has a duty to accurately disclose the fees it charges to consumers. Yet despite its duty and knowledge, Defendant misrepresented the Transaction Fee, knowing that it had no basis to do so.

79. Defendant made, and continues to make, affirmative misrepresentations to consumers to continue to profit from its pay-to-pay Transaction Fee scheme.

80. Defendant misrepresented material facts that are important to Plaintiff and Class members in deciding the manner in which they pay their rent. Defendant's misrepresentations were knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and Class members.

81. As a result, Plaintiff and Class members reasonably relied upon Defendant's affirmative misrepresentations of these material facts and suffered injury as a proximate result of that justifiable reliance.

82. The true extent and nature of the Transaction Fee as a junk fee was not reasonably detectible to Plaintiff and Class members.

83. At all times, Defendant actively and intentionally misrepresented the Transaction Fee and failed to inform Plaintiff and Class members of its true nature. Plaintiff's and Class members' lack of awareness was thus not attributable to a lack of diligence on their part.

84. The statements, words and acts by Defendant were made for the purpose of misrepresenting the truth about the Transaction Fee.

85. Defendant misrepresented the Transaction Fee for the purpose of delaying Plaintiff and Class members from filing a complaint on their causes of action.

86. Due to Defendant's active misrepresentation to Plaintiff and Class members of the true nature of the Transaction Fee, any and all statutes of limitations that may otherwise be

applicable to the allegations are tolled. Moreover, Defendant is estopped from relying on any statute of limitations in light of its active misrepresentation regarding the Transaction Fee.

87. Furthermore, the causes of action alleged herein did not occur until Plaintiff and Class members discovered the true nature of the Transaction Fee. Plaintiff and Class members had no realistic ability to discern that the Transaction Fee was just a junk fee. In either event, Plaintiff and Class members were hampered in their ability to discover their causes of action because of Defendant's active misrepresentation regarding the true nature of its Transaction Fee.

## VII. CLASS ACTION ALLEGATIONS

88. Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), on behalf of herself and the members of the following proposed nationwide class ("Nationwide Class"): [17]

> During the fullest period allowed by law, all persons who were charged a Transaction Fee by Defendant when making a rent payment.

89. Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), on behalf of herself and the members of the following proposed multi-state class ("Multi-State Consumer Protection Class"):

> During the fullest period allowed by law, all persons who were charged a Transaction Fee by Defendant when making a rent payment in any state with similar consumer protection laws.[18]

---

[17] Unless otherwise specified, all references in this Complaint to "Classes" or the "Class" refer collectively to the Nationwide Class, Multi-State Consumer Protection Class and D.C. Class.

[18] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer protection laws under the facts of this case include, but are not limited to: Alaska (AS §§ 45.50.471, *et seq.*), Arkansas (Ark. Code §§ 4-88-101, *et seq.*), California (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), Connecticut (Conn. Gen. Stat. §§ 42-110, *et seq*), Delaware (Del. Code tit. 6, §§ 2511, *et seq.*), District of Columbia (D.C. Code §§ 28-3901, *et seq.*), Florida (Fla. Stat. §§ 501.201, *et seq.*), Hawaii (Haw. Rev. Stat. §§ 480-1, *et seq.*), Illinois (815 ICLS §§ 501/1, *et seq.*), Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*), Michigan (Mich. Comp. Law §§ 445.901, *et seq.*), Minnesota (Minn. Stat. §§ 325F.67, *et seq.*), Missouri (Mo. Rev. Stat. §§ 407.010, *et seq.*), New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*), New York (N.Y. Gen. Bus. Law. §§

90. Plaintiff further brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of herself and the members of the following class ("D.C. Class"):

> During the fullest period allowed by law, all persons who were charged a Transaction Fee by Defendant in the District of Columbia when making a rent payment.

91. Excluded from the Class are Defendant, its subsidiaries and affiliates, officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned and the members of their immediate families.

92. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court rules on certification.

93. **Numerosity**. The proposed Class is numerous such that joinder is impracticable. The identities of Class members are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. The proposed Class is also sufficiently ascertainable because Defendant has the administrative capability through its computer systems and other business records to identify all members of the proposed Class and such specific information is not otherwise available to Plaintiff.

---

349, *et seq*. and §§ 350, *et seq*.), Rhode Island (R.I. Gen. Laws §§ 6-13.1-1, *et seq*.), Vermont (Vt. Stat. tit. 9, §§ 2451, *et seq*.), Washington (Wash. Rev. Code §§ 19.86.010, *et seq*.), and Wisconsin (Wis. Stat. §§ 100.18, *et seq*.). *See Langan v. Johnson & Johnson Consumer Companies, Inc*., 897 F.3d 88, 96 (2d Cir. 2018); *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 201, 204 (W.D.N.Y. 2020); *see also Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, *9-10 (N.D. Ill. Nov. 16, 2021) (certifying a similar multi-state consumer protection class).

94. **Commonality**. The questions here are ones of common or general interests such that there is a well-defined community of interest among Class members. These questions predominate over questions that may affect only individual Class members because Defendant acted on grounds generally applicable to the proposed Class. Such common legal or factual questions include, but are not limited to:

a. Whether Defendant's Transaction Fee is unfair, unlawful, deceptive or misleading;

b. Whether Defendant's Transaction Fee violates the laws asserted herein;

c. Whether Plaintiff and the Class were harmed by Defendant's alleged misconduct;

d. Whether Defendant was unjustly enriched;

e. Whether Defendant tortiously interfered with Class members' lease agreements;

f. Whether Plaintiff and the Class are damaged and if so, the proper measure of damages; and

g. Whether an injunction is necessary to prevent Defendant from continuing to engage in the wrongful conduct described herein.

95. **Typicality**. Plaintiff's claims are typical of the claims of other Class members in that they arise out of the same wrongful business practice by Defendant, as described herein.

96. **Adequacy**. Plaintiff is a more than adequate representative of the Class as she has suffered damages from Defendant's improper business practices. Additionally:

a. Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and retained competent counsel experienced in the prosecution of consumer class actions;

b. There is no conflict of interest between Plaintiff and unnamed Class members;

c. Plaintiff anticipates no difficulty in managing this case as a class action; and

d. Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

97. **Predominance & Superiority**. Common questions of fact or law concerning Defendant's liability to all Class members for charging Transaction Fees on rent payments predominate over any questions affecting only individual Class members. A class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class members' individual claims before the Court, especially where, as here, individual Class members' damages are relatively small. Class treatment permits many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense or the possibility of inconsistent or contradictory judgments that individual actions would engender. The benefits of a class action, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiff knows of no difficulty to be encountered that would preclude this case's maintenance as a class action.

98. **Final Declaratory or Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to each Class member, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

99. **Particular Issues**. Plaintiff's claims concern particular issues common to all Class members and capable of class-wide resolution that will significantly advance the litigation.

## VIII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violations of State Consumer Protection Statutes**

***(By Plaintiff, individually, and on behalf of the Multi-State Consumer Protection Class)***

100. Plaintiff, individually, and on behalf of the Multi-State Consumer Protection Class, realleges and incorporates paragraphs 1 through 99 as if fully set forth herein.

101. Plaintiff and the Multi-State Consumer Protection Class members were injured as a result of Defendant's violations of the state consumer protection statutes alleged herein. These state consumer protection statutes provide a basis for redress to Plaintiff and the Multi-State Consumer Protection Class based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

102. Defendant's conduct, as alleged herein, violates the consumer protection, unfair trade practices, and deceptive laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

103. Defendant's Transaction Fee violates these prohibitions because Defendant does not inform consumers that the junk fee is not permitted by their residential leases.

104. Defendant engaged in fraudulent, unfair and/or deceptive conduct which creates the likelihood of confusion or misunderstanding in violation of applicable law.

105. Specifically, Defendant charged fees that provided no added value to reasonable consumers, misrepresented the mandatory nature of the fees and misrepresented the total cost of Plaintiff's and Class members' rent obligations.

106. Defendant further engages in unfair and deceptive trade practices in violation of these statutes by violating the FDCPA as alleged herein. Specifically, Defendant violates the FDCPA by charging Transaction Fees that are neither permitted by law nor authorized by

Plaintiff's and Class members' lease agreements and by misrepresenting to tenants that it is entitled to collect pay-to-pay Transaction Fees.

107. Defendant intended for Plaintiff and Multi-State Consumer Protection Class Members to reasonably rely upon the material misrepresentations and omissions concerning the true nature of the Transaction Fee.

108. Defendant's misrepresentations and other deceptive conduct were likely to deceive and cause misunderstanding and/or, in fact, did cause Plaintiff and Multi-State Consumer Protection Class members to be deceived about the true nature of the Transaction Fee.

109. Furthermore, despite Defendant's knowledge of material facts concerning the mandatory nature of the Transaction Fee, Defendant actively concealed the true nature of the Transaction Fee from consumers by failing to disclose the junk fee is not permitted by Plaintiff's and Multi-State Consumer Protection Class members' residential leases.

110. Defendant knew, or otherwise should have known, that the Transaction Fee was unfair, unlawful, deceptive and misleading and that it failed to adequately disclose the nature of the junk fee.

111. Defendant omitted, concealed and failed to disclose to Plaintiff and Multi-State Consumer Protection Class members the true nature of the Transaction Fee, amounting to an undisclosed increase in consumers' rent. Rather than disclose this information, Defendant unlawfully profited greatly from the Transaction Fees at the expense of Plaintiff and Multi-State Consumer Protection Class members.

112. The facts concealed and/or not disclosed by Defendant to Plaintiff and other Multi-State Consumer Protection Class members, were material, in part, because the Transaction Fee is merely a second payment—in the form of a junk fee—for the convenience that consumers are

already paying for. Such facts affect the conduct of lessors and a reasonable person would have considered those facts to be important in deciding the means in which they paid their rent. Rather than disclose this information, Defendant represented the Transaction Fee as complying with all applicable standards and regulations.

113. Defendant intentionally concealed and/or failed to disclose such material facts for the purpose of inducing Plaintiff and other Multi-State Consumer Protection Class members, to pay the Transaction Fee.

114. As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiff and Multi-State Consumer Protection Class members suffered ascertainable losses.

115. Had they been aware of the true nature of the Transaction Fee, Plaintiff and Multi-State Consumer Protection Class members would have made their rent payments by some other method to avoid the Transaction Fee.

116. Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Multi-State Consumer Protection Class members are entitled to recover compensatory, restitution, punitive and special damages, including, but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted by relevant law.

## SECOND CAUSE OF ACTION

**D.C. Consumer Protection Procedures Act (the "CPPA")**
**Violation of D.C. Code §§ 28-3901, *et seq.***
***(By Plaintiff, individually, and on behalf of the D.C. Class)***

117. Plaintiff, individually, and on behalf of the D.C. Class, realleges and incorporates paragraphs 1 through 99 as if fully set forth herein.

118. The CPPA is a broadly construed remedial statute that prohibits "unfair or deceptive trade practice[s]" and establishes "an enforceable right to truthful information from merchants about consumer goods and services." D.C. Code §§ 28-3901(c), 28-3904.

119. A violation of the CPPA occurs regardless of "whether or not any consumer is in fact misled, deceived, or damaged" by the unlawful trade practice. D.C. Code § 28-3904.

120. Defendant is a "merchant" providing "services" as defined in the CPPA.

121. Plaintiff and Class members are "consumers" as defined in the CPPA.

122. Defendant violates the CPPA because its actions as alleged herein constitute an "unfair or deceptive trade practice"—namely, "misrepresent[ing] as to a material fact which has a tendency to mislead," "fail[ing] to state a material fact if such failure tends to mislead," and "advertis[ing] or offer[ing] goods or services . . . without the intent to sell them as advertised or offered." D.C. Code § 28-3904.

123. Specifically, Defendant violates the CPPA by charging fees that provide no added value to reasonable consumers and by misrepresenting the nature of the fees and misrepresenting the total cost of Plaintiff's and Class members' rent obligations. The financial harm to consumers because of Defendant's wrongful business practice is substantial.

124. Defendant further engages in unfair and deceptive trade practices in violation of the CPPA by violating the FDCPA as alleged herein. Specifically, Defendant violates the FDCPA by charging Transaction Fees that are neither permitted by law nor authorized by Plaintiff's and Class members' lease agreements and by misrepresenting to tenants that it is entitled to collect pay-to-pay Transaction Fees.

125. Defendant further engages in unfair and deceptive trade practices in violation of the CPPA by violating D.C. Code § 28-3814(z), which renders violations of the FDCPA *per se*

unlawful under Washington D.C. law. Trade practices in violation of the laws of the District of Columbia are *per se* violations of the CPPA. *See* D.C. Code § 28-3905(k)(1)(A).

126. Defendant's actions as described herein have the tendency or capacity to mislead, and did mislead, reasonable consumers and, unless enjoined, will continue to mislead them in the future.

127. Defendant knew or should have known that it failed to adequately disclose the nature and existence of the Transaction Fee and that these facts are material to reasonable consumers, including Plaintiff and Class members.

128. Plaintiff relied on Defendant's misrepresentations in making her rent payment. Had she known that she would be charged a useless Transaction Fee for making rent payments, she would have chosen some other method to make her rent payment.

129. As a direct and proximate result of Defendant's misconduct, Plaintiff and the Class suffered and will continue to suffer ascertainable losses in the form of the wrongfully collected Transaction Fees.

130. Plaintiff and Class members are entitled to an order enjoining the conduct complained of herein on behalf of the general public, actual damages, treble damages, costs of suit, a reasonable attorneys' fee, punitive damages and such further equitable relief as the Court may deem proper.

**<u>THIRD CAUSE OF ACTION</u>**

**Washington Consumer Protection Act (the "WCPA")**
**Violation of Wash. Rev. Code §§ 19.86, *et seq.***
***(By Plaintiff, individually, and on behalf of the Nationwide Class)***

131. Plaintiff, individually, and on behalf of the Nationwide Class, realleges and incorporates paragraphs 1 through 99 as if fully set forth herein.

132. Defendant is a "person" within the meaning of the WCPA and conducts "trade" and "commerce" within the meaning of the WCPA. Plaintiff and Class Members are "persons" within the meaning of the WCPA. Payments wrongfully obtained from Plaintiff and Class Members constitute "assets" within the meaning of the WCPA.

133. Defendant's actions as described herein are unfair and deceptive within the meaning of the WCPA. Specifically, Defendant charges fees that provide no added value to reasonable consumers, misrepresenting the nature of the fees and misrepresenting the total cost of Plaintiff's and Class members' rent obligations. The financial harm to consumers because of Defendant's wrongful business practice is substantial.

134. Defendant's failure to adequately disclose the existence and nature of its fees to Plaintiff and Class Members who utilize Defendant's rent payment platform is a deceptive and unfair practice.

135. Defendant's actions as described herein have the tendency or capacity to mislead, and did mislead, reasonable consumers and, unless enjoined, will continue to mislead them in the future.

136. Defendant further engages in unfair and deceptive trade practices in violation of the WCPA by violating the FDCPA as alleged herein. Specifically, Defendant violates the FDCPA by charging Transaction Fees that are neither permitted by law nor authorized by Plaintiff's and Class members' lease agreements and by misrepresenting to tenants that it is entitled to collect pay-to-pay Transaction Fees.

137. Plaintiff relied on Defendant's misrepresentations in making her rent payment. Had she known that she would be charged a useless Transaction Fee for making rent payments, she would have chosen some other method to make her rent payment.

138. As a direct and proximate result of Defendant's misconduct, Plaintiff and the Class suffered and will continue to suffer ascertainable losses in the form of the wrongfully collected Transaction Fees.

139. Defendant's actions are unfair in that they offend public policy and are immoral, unethical, oppressive and unscrupulous and cause substantial injury to consumers.

140. Defendant's actions as described herein occur in Defendant's trade or business and have injured and deceived a substantial portion of the public. Defendant's general course of conduct has an impact on the public interest, and the acts complained of herein are ongoing.

141. Defendant's conduct has injured Plaintiff and Class Members in that Plaintiff and Class members lost money because of Defendant's unfair and deceptive fees.

142. Plaintiff and Class members are entitled to an order enjoining the conduct complained of herein, actual damages, treble damages, costs of suit, a reasonable attorneys' fee, and such further equitable relief as the Court may deem proper.

## FOURTH CAUSE OF ACTION

**Tortious Interference with Contract**
***(By Plaintiff, individually, and on behalf of the Nationwide Class; Alternatively, on behalf of the D.C. Class)***

143. Plaintiff, individually, and on behalf of the Nationwide Class, and alternatively the D.C. Class, realleges and incorporates paragraphs 1 through 99 as if fully set forth herein.

144. Plaintiff and members of the Class entered into valid lease agreements with rental property management companies and landlords based on their economic necessity for rental housing services. Defendant knew or should have known about this business relationship when it acted as the third-party platform through which Plaintiff and Class members were required to make monthly rental payments to those rental property management companies and landlords.

145. Defendant intentionally and/or wrongfully interfered with those lease agreements to Plaintiff's and Class members' detriment by charging Transaction Fees which amounted to undisclosed rent costs.

146. Defendant's act of charging Transaction Fees on Plaintiff's and Class members' rent payments was designed to induce and did induce breach and/or disruption of their contractual relationship with those entities. Defendant knew that, by charging unlawful pay-to-pay fees, it was increasing the monthly rent amounts owed by Plaintiff and Class members to landlords pursuant to the terms of their lease agreements.

147. Defendant's intentional interference caused Plaintiff and members of the Class actual harm in the form of the wrongfully collected Transaction Fees.

## FIFTH CAUSE OF ACTION

**Unjust Enrichment**
***(By Plaintiff, individually, and on behalf of the Nationwide Class; Alternatively, on behalf of the D.C. Class)***

148. Plaintiff, individually, and on behalf of the Nationwide Class, and alternatively the D.C. Class, realleges and incorporates paragraphs 1 through 99 as if fully set forth herein.

149. To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

150. Plaintiff and the Class conferred a benefit on Defendant.

151. Defendant unfairly, deceptively, unjustly and/or unlawfully accepted said benefit, which under the circumstances, would be unjust to allow Defendant to retain.

152. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

153. Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained Transaction Fees received by Defendant because of its inequitable conduct as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for herself and the Class as follows:

a. Certifying the proposed Class(es), appointing Plaintiff as representative of the Class(es) and appointing her counsel as class counsel;

b. Declaring that Defendant's policies and practices described herein are improper;

c. Enjoining Defendant from engaging in the wrongful conduct as described herein on behalf of the general public;

d. For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth herein;

e. Awarding actual and statutory damages in an amount according to proof;

f. Awarding treble damages as permitted by law;

g. Awarding pre-judgment interest at the maximum rate permitted by law;

h. Reimbursing all costs, expenses and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs and expenses, pursuant to applicable law and any other basis; and

i. Awarding such other relief as this Court deems just and proper.

## X. DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand a jury trial on all issues in this Complaint that are so triable as a matter of right.

Dated: August 14, 2026 Respectfully submitted,

**KALIELGOLD PLLC**

By: */s/ Sophia Goren Gold*
Sophia G. Gold (DC No. 1044723)

490 43rd Street, Suite 122
Oakland, CA 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

Jeffrey D. Kaliel (DC Bar No. 983578) 1100 15th Street NW, 4th Floor Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

**PEARSON WARSHAW, LLP**
Melissa S. Weiner (MN Bar No. 0387900)*
Ryan T. Gott (MN Bar No. 0397978)*
328 Barry Avenue S., Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pwfirm.com
rgott@pwfirm.com

**Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff and the Putative Class*